[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This application for prejudgment remedy is brought by the plaintiffs, Robert and Mary Paul, against the defendants Mitchell and Fara Levine. The plaintiffs had entered into a real estate contract, dated February, 2000, to purchase the home of the defendants for $890,000 and gave a ten percent (10%) deposit of $89,000 upon signing. A closing date of April 4, 2000 was specified in the contract, although time was not of the essence. The plaintiffs failed to close on the property and now bring this action for unjust enrichment, seeking the return of their $89,000 deposit.
The contract of sale contained no mortgage contingency clause, but the plaintiffs apparently needed to sell their house in order to consummate their transaction with the defendants. The plaintiffs had been assured by their real estate broker that their present house would sell "in a week". This did not occur, nor was it sold by March 28, 2000 at which time the plaintiffs notified the sellers that they would not close on April 4, 2000.
The contract contained a ten day delay clause, which imposed a penalty on the party causing the delay of $300 per day. The defendants take the position in this case that the date of default by the plaintiffs was, therefore, April 14, 2000.
The defendants introduced into evidence an appraisal report prepared a year, earlier, in 1999, stating the defendants' house had a then value of $1,000,000. The defendant Mitchell Levine testified that his house was worth that and more in 2000. Nevertheless, a week after the plaintiffs' default, the defendants received a binder of sale on April 21, 2000 for $945,000, entered into a firm contract of sale for that price on April 24, 2000, and closed in early May, the deed having been recorded on May 9, 2000. The defendants, relying on a liquidated damages provision in the contract, have retained the $89,000 deposit given by the plaintiffs.
The plaintiffs claim that, notwithstanding the liquidating damages clause in the contract, because the defendants in fact suffered no damage, the defendants have been unjustly enriched at the expense of the plaintiffs. The defendants claim that they indeed suffered damages, in the amount of $113,935.29.
"The presumption of validity that attaches to a clause liquidating the sellers damages at ten percent (10%) of the contract price in the event of the purchasers' unexcused non-performance is, like most other CT Page 2235 presumptions, rebuttable. The purchaser, despite his default, is free to prove that the contract, or any part thereof, was the product of fraud or mistake or unconscionability. In the alternative, the purchaser is free to offer evidence that his breach in fact caused the seller no damages or damages substantially less than the amount stipulated as liquidated damages." (Citations omitted). Vines v. Orchard Hills, Inc., 181 Conn. 501,513, 435 A.2d 1022 (1980). "[N]o provision in a contract for the payment of a fixed sum as damages, whether stipulated for as a penalty or as liquidated damages, will be enforced in a case where the court sees that no damage has been sustained. . . . If the parties honestly but mistakenly suppose that a breach will cause harm that will be incapable or very difficult of accurate estimation, when in fact the breach causes no harm at all or none that is incapable of accurate estimation without difficulty, their advance agreement fixing the amount to be paid as damages for the breach . . . is not enforceable." (Citations omitted; internal quotation marks omitted); Norwalk Door Closer Co. v. Eagle Lock Screw Co., 153 Conn. 681, 688, 220 A.2d 263 (1966). "Otherwise valid liquidated damages clauses may not be enforced when the non-breaching party suffers no damages. If the damage envisioned by the parties never occurs, the whole premise for their agreed estimate vanishes, and. . . . neither justice nor the intent of the parties is served by enforcement. A purchaser of real property does not, despite his knowing default, forfeit the right to seek restitution of sums of money earlier paid under the contract of sale, even when such payments are therein characterized as liquidated damages." (Citations omitted, internal quotation marks omitted). Stabenau v. Cairelli, 22 Conn. App. 578, 580, 577 A.2d 1130
(1990). "A buyer in nonwilfull default can recover monies paid upon a contract and retained by the seller, despite an otherwise valid liquidated damages clause, where the seller has sustained no damages." Id., 581.
In this case, the court finds that a judgment will be rendered in favor of the plaintiffs, entitling them to the restitution of the $89,000 paid upon the contract. The breach of contract was not wilfull. "Wilfull as a term of art requires more than a finding of deliberate action. The contemporary view is that the court must consider not only the deliberateness of the breach but also other factors in determining whether to apply the court's equitable jurisdiction. These factors include, among others, the degree of innocence of the breach, the amount of the detriment to the breaching party and the amount of benefit conferred upon the non-breaching party." (Citations omitted; internal quotation marks omitted). Stabenau v. Cairelli, supra, 220 Conn. App. 581. The plaintiffs entered into the contract with the defendants believing, on the advice from their broker, that their own house would be sold "in a week." When over a month later it had not been sold, they defaulted in their contract with the defendants. There is no evidence to suggest any CT Page 2236 other reason for the failure to close, nor to suggest that the plaintiffs would not have closed had they in fact obtained a buyer for their house. See Stabenau v. Cairelli, supra, 22 Conn. App. 578 (where plaintiffs' breach was intentional and voluntary, it was held not wilfull because of the plaintiffs' insecurities about future employment). The plaintiffs were not unreasonable in relying on the advice of their professional broker concerning the saleability of their personal home. The amount of detriment to the breaching party, the plaintiffs, being a loss of $89,000, far exceeds that of the nonbreaching parties, the defendants, as will be seen hereinafter.
The measure of damages in a breach of contract case is the difference between the contract price and the market value of the property, the relevant timing to measure the seller's damages being the time of the breach. Vines v. Orchard Hills, supra, 181 Conn. 513. The contract price in the present case was $890,000, and the breach thereof was on April 14, 2000. Seven days later, the defendants obtained a binder of sale from a third party for $945,000, $55,000 higher than the contract price with the plaintiffs. Sales price is an indication of market value.
The defendants, however, contend that they incurred expenses due to the plaintiffs' breach in the amount of $113,935.29. The bulk of those expenses, $85,000, are attributable to what the defendants describe as a "lost opportunity to sell." The defendants claim that had they been able to wait longer to sell the house, they would have been able to obtain a "Spring" price for the property, which would have been 15% higher than the "Winter" price of $945,000. Because of time constraints due to the plaintiffs' breach, the defendants were unable to wait. Apparently, the same or similar constraints must have faced the defendants two months earlier when they were willing to sell to the plaintiffs for $890,000 in February. The defendants' claim relative to an $85,000 lost opportunity is without merit.
Granting, without deciding, that each of the remaining items of damages may properly be claimed by the defendants, they have incurred only $28,935 in expenses due to the plaintiffs' breach of contract. Because they sold the premises for $945,000, a price which is $55,000 higher than that called for in their contract with the plaintiffs, they have suffered no damage.
Accordingly, the court finds probable cause that the plaintiffs will obtain a judgment, after a full hearing on the merits, in the amount of $89,000. The court does not find it appropriate to add prejudgment or offer of judgment interest to the amount or to any attachment at this time. CT Page 2237
The court will not order an attachment of unspecified property. However, the court grants the plaintiffs' motion for disclosure of assets, following which disclosure the parties may agree upon an attachment of property, or in the absence thereof, the plaintiffs may return to court for an order of attachment of specific property.
So Ordered.
D'ANDREA, J.T.R.